IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**CORE ELECTRIC COOPERATIVE f/k/a THE INTERMOUNTAIN RURAL ELECTRIC ASSOCIATION; INTERMOUNTAIN RURAL ELECTRIC ASSOCIATION FULLY INSURED (NON-UNION) DEFINED BENEFIT PLAN,**

    Plaintiffs,

**v.**

**SECURIAN FINANCIAL GROUP, INC.; MINNESOTA LIFE INSURANCE COMPANY**

    Defendants.

## COMPLAINT

Plaintiffs, CORE Electric Cooperative f/k/a The Intermountain Rural Electric Association ("CORE") and Intermountain Rural Electric Association Fully Insured (Non-Union) Defined Benefit Plan (the "Plan"), allege as follows:

### JURISDICTION AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1500 and the Court has original jurisdiction pursuant to 29 U.S.C. § 1132(e). Venue is proper pursuant to 29 U.S.C. § 1132(e)(2). The Court also has supplemental jurisdiction under 28 U.S.C. § 1367.

2. In addition, the Court has authority to provide the relief Plaintiffs seek under 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment Act), and Federal Rule of Civil Procedure 57.

1

## PARTIES

3. Plaintiffs are CORE Electric Cooperative f/k/a the Intermountain Rural Electric Association ("CORE") and the Intermountain Rural Electric Association Fully Insured (Non-Union) Defined Benefit Plan (the "Plan").

4. CORE is the "plan sponsor" of the Plan, as defined in 29 U.S.C. § 1002(16)(B)(i), and is also a "fiduciary" of the Plan, as defined in 29 U.S.C. § 1002(21).

5. The Plan is an "employee benefit pension plan" as defined in 29 U.S.C. § 1002(2).

6. Defendants Securian Financial Group, Inc. ("Securian") and Minnesota Life Insurance Company ("Minnesota Life") are entities with their principal place of business in Minnesota.

## FACTUAL BACKGROUND

7. The Plan was established in 1957 through the adoption of a trust agreement in which CORE stated that it would sponsor a retirement plan through the purchase of income-endowment insurance policies from Minnesota Life.

8. The Plan is a fully insured defined benefit pension plan that is operated in accordance with 26 U.S.C. § 412(i), now amended to be 26 U.S.C. § 412(e)(3), and is intended to be a tax-qualified pension plan under 26 U.S.C. § 401(a).

9. Securian, by way of an agreement with the Plan Sponsor, acts as the third-party administrator of the Plan.

10. Since the Plan's inception, Minnesota Life and/or Securian, acting as the Plan's third-party administrator, have been responsible for calculating the amount of the insurance policy premiums to be paid by CORE to Minnesota Life to fund all of the benefits payable under the Plan.

11.  Securian also computes the benefits payable to Plan participants and distributes such benefits to the aforesaid participants at the time that the participants are eligible to receive (or to commence receiving) them from the Minnesota Life insurance policies used to fund the Plan.

12.  Securian therefore has discretionary authority and control over the Plan's assets, making Securian a fiduciary of the Plan.

13.  The accrued benefits payable to Plan participants are expressed in the form of an annuity benefit commencing at each respective participant's normal retirement age. However, the Plan permits participants to elect to receive (or commence receiving) Plan benefits at an earlier or later date in certain cases, and also to receive their benefits at the time that they become payable in the form of a single lump benefit payment, in which case the aforesaid annuity benefit must be actuarially converted into a lump sum benefit amount.

14.  After the Plan was established, the applicable pension law under which the Plan is governed was updated numerous times. One of the many changes to the relevant law was to add Section 417(e)(3) to the Internal Revenue Code (26 U.S.C. § 417(e)(3)) ("Section 417(e)(3)"), which mandates that "the present value [of a lump sum distribution] shall not be less than the present value calculated by using the applicable mortality table and the applicable interest rate." 26 U.S.C. § 417(e)(3)(A).

15.  The IRS publishes periodic notices regarding the applicable interest rates and the applicable mortality tables that must be used to calculate the minimum lump sum benefit payable based on participant's accrued benefit pursuant to Section 417(e)(3).

16.  The lump sum benefit distributed to a participant under the Plan may exceed the minimum lump sum benefit calculated in accordance with Section 417(e)(3), but can never be less.

3

17. Through its pension consultant, the USI Consulting Group ("USI"), CORE discovered in March 2020 that Securian had not adhered to the requirements of Section 417(e)(3) for a number of years and that the lump sum distributions paid to certain participants were insufficient resulting in an operational failure under the Plan.

18. USI contacted Securian to alert them to the aforesaid calculation and distribution (payment) errors and informed Securian that certain Plan participants had been underpaid.

19. However, Securian disagreed that Section 417(e)(3) should apply because the Plan is a fully insured pension plan administered in accordance with Section 412(e)(3) of the Internal Revenue Code of 1986 ("Section 412(e)(3)").

20. According to Securian, Section 412(e)(3) and its requirement that "the plan is funded exclusively by the purchase of individual insurance contracts" enables the Plan to avoid the requirements of using the statutorily designated mortality table and interest rate even if the benefits under Section 417(e)(3) are higher than what the insurance annuity contract provides.

21. However, there is no guidance indicating that Section 417(e)(3) does not apply to Section 412(e)(3) plans and CORE, USI, and Plan counsel have attempted to explain to Securian that the Plan must adhere to Section 417(e)(3). CORE specifically requested that Securian correct the past undercalculated benefits and distributions in accordance with Section 417(e)(3) and correctly adhere to the law on a go forward basis.

22. Moreover, the Plan document, which was drafted by Securian and/or Minnesota Life, clearly states that Section 417(e)(3) shall be followed "if it produces a greater benefit than that determined by the interest and mortality assumptions specified in the Adoption Agreement."

4

23. In response, Securian claims that, despite the clear language in the Plan document to the contrary, the Plan mandates that Securian forego Section 417(e)(3)'s requirements.

24. Securian has refused, and continues to refuse, to make any past or future corrections to the lump sum benefit calculations and distributions, which has caused the Plan's participants to be underpaid, and will continue to cause the Plan's participants to be underpaid in the future.

25. Any future corrective payment to the Plan's participants will currently be more expensive than if Securian had properly calculated and provided lump sum benefits that adhere to Section 417(e)(3)'s requirements under the annuity contract, therefore causing injury to the Plan.

## FIRST CLAIM FOR RELIEF
### Breach of Fiduciary Duty against Securian – 29 U.S.C. § 1109

26. Paragraphs 1 through 25 are restated and incorporated by reference.

27. Securian is a fiduciary of the Plan, as evidenced by its discretionary control and authority over Plan assets.

28. As a fiduciary, Securian has a fiduciary obligation to administer the Plan as written.

29. The Plan document clearly states that Section 417(e)(3) should be followed when calculating lump sum benefits.

30. Securian has refused, and continues to refuse, to follow the terms of the Plan document by disregarding the requirements of Section 417(e)(3).

31. Securian has therefore breached its fiduciary duty to administer the Plan in accordance with the document governing the Plan.

32. As such, Securian is liable for the losses that the Plan incurred as a result of Securian's breach of its duty.

## SECOND CLAIM FOR RELIEF
### Breach of Contract against all Defendants

33. Paragraphs 1 through 32 are restated and incorporated by reference.

34. There is a valid existing agreement between Securian and the Plan and/or CORE.

35. Securian's agreement with the Plan and/or CORE requires Securian to provide monthly premium invoices and correctly prepare, review, approve and process participant benefit distributions.

36. Securian did not correctly calculate or distribute participant lump sum benefits due to Securian's refusal to apply Section 417(e)(3) in its benefit calculations.

37. Securian therefore breached the agreement.

38. As a direct result of this breach Securian has caused the Plan and/or CORE to suffer damages.

39. Moreover, Minnesota Life provides annuity contracts to the Plan and/or CORE, which state that the contracts shall provide all benefits under the Plan.

40. As explained above, the Plan requires that Section 417(e)(3) be applied when calculating benefits for the Plan's participants.

41. Minnesota Life does not apply Section 417(e)(3) when providing benefits to the Plan's participants. The annuity contracts therefore do not provide all of the benefits under the Plan and therefore Minnesota Life has breached the contract with the Plan and/or CORE.

42. As a direct result of this breach Minnesota Life has caused the Plan and/or CORE to suffer damages.

43. Securian's and Minnesota Life's breaches have forced CORE and the Plan to retain the services of an attorney to prosecute this action and is entitled to recovery of reasonable attorney fees.

### THIRD CLAIM FOR RELIEF
### Declaratory Judgment against all Defendants

44. Paragraphs 1 through 43 are restated and incorporated by reference.

45. This dispute is a case of actual controversy within this Court's jurisdiction.

46. CORE and the Plan seek a judicial determination that Section 417(e)(3) is applicable to defined benefit pension plans established in accordance with Section 412(e)(3), like the Plan.

47. CORE and the Plan seek a judicial determination that the plan document states that Section 417(e)(3) shall be followed.

48. As a result, CORE and the Plan also seek a judicial determination that its participants have been underpaid, and will continue to be underpaid, in their lump sum benefit amounts.

49. Securian will not apply the proper calculations to lump sum distributions and CORE and the Plan request this Court issue a declaratory judgment commanding Securian to follow the correct interpretation of the law, regardless of the entity that funds the future supplemental distributions to the Plan's participants.

### RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for relief as follows:

1. A judgment against Securian for the losses to the Plan incurred from Securian's breach of fiduciary duty, including but not limited to, the supplemental amount needed to correct

the underpaid lump sum distribution amounts made to the Plan's participants;

2. A judgment against Securian the monetary difference between what CORE would have paid in correctly calculated annuity contract benefits versus what CORE may be required to pay in order to provide its participants with the correct lump sum distribution amounts;

3. A judgment stating that Section 417(e)(3) applies to defined benefit pension plans formed in accordance with Section 412(e)(3);

4. A judgment stating that the Plan document requires that Section 417(e)(3) shall be followed when the applicable mortality and interest tables provide a greater benefit than the cash surrender value of the annuity contract;

5. A judgment stating that Securian must facilitate corrective payments made to participants who have received incorrect lump sum distributions in the past, and that Securian must adhere to Section 417(e)(3) going forward;

6. Attorney's fees and costs incurred while prosecuting this action, to the extent allowed by law; and

7. For such other and further relief as the Court deems proper.

Dated: September 29, 2022.

                BROWNSTEIN HYATT FARBER SCHRECK, LLP

                /s/ *Christopher M. Humes*
                Christopher M. Humes, NV #12782
                William D. Nobriga, #54486
                BROWNSTEIN HYATT FARBER SCHRECK, LLP
                410 Seventeenth Street, Suite 2200
                Denver, Colorado 80202
                Telephone: 303.223.1252
                Email: chumes@bhfs.com; wnobriga@bhfs.com

                Attorneys for Plaintiffs